NO. 8105.

STANLEY A. HARVEY

VS

MRS. W. T. NOLAN, ET AL.

STATE OF LOUISIANA

**8105**

COURT OF APPEAL

PARISH OF ORLEANS

*Court of Appeal*
PARISH OF ORLEANS

FILED MAY 31/21

**8105**

70

## OPINION.

By his Honor John St. Paul.

Plaintiff alleges that on November 24th 1916 defendants gave him a ninety days option on six certain lots of ground for $1900; that within said period he notified them of his intention to avail himself thereof and demanded of them a transfer; that defendants refused to abide by their obligation, but on the contrary sold the property to a third party for $2500, thus making a profit of $600 on his property; which profit plaintiff now claims as damages.

The defense set up in the answer is that said option was obtained by fraud; towit, that at the time thereof and prior thereto plaintiff had been employed by them as their agent to sell said property, and had actually then found a purchaser therefor, towit, the very same party to whom they sold, and at the very same price for which they sold; and all of which he failed to disclose when he obtained said option. Defendants further set up that the option was without consideration; and finally that it was an attempt by plaintiff to evade the provisions of Act 42 of 1908, relative to real estate agents, with which plaintiff had not complied.

71

## I.

Taking these up in reverse order we will first dispose of the defense last made. Act 42 of 1902 requires real estate agents to furnish a certain bond; which plaintiff had not done. But whatever may or may not have been the case on other occasions, it is certain that on this one occasion at least plaintiff did his best not to act as real estate agent, and to that end merely exercised a privilege lawfully accorded to all, towit, that of purchasing an option. Act 249 of 1910

In so doing he was obeying the law, not violating it. For it is not unlawful to do that which the law allows, even when done for the express purpose of avoiding something which the law forbids. Reeves vs Harper, 43 An 516, 522; Scottish Mortgage Co vs Ogden, 49 An 10,14.

## II.

The option declares that it was given in consideration of $10, receipt whereof is acknowledged in the instrument itself; and it is testified and not seriously denied that plaintiff gave defendants a perfectly good check for that amount. Defendants however did not collect the check, and have not even attempted to do so. But the answer to this is in the maxim "Volenti non fit injuria." For the consideration agreed upon was certainly put within the power of the defendants; and if they did not choose to

72

grasp it, their voluntary inaction cannot result to their own benefit and to the prejudice of plaintiff.

### III.

The defense that the option was obtained by fraud is not borne out by the evidence. Plaintiff testifies that he had had the property for sale for account of the defendants and had offered it to one Peyrefitte, to whom defendants afterwards sold it; that Peyrefitte had offered $600 for about one third of it (towit, 45 feet out of 135 feet front on O'Reilly Street); that the offer was submitted to defendants but the latter refused it; that defendants wanted to sell the whole property and at once; and that it was not until December 6th 1916, or nearly two weeks after the option had been given, that Peyrefitte for the first time showed any inclination whatever to buy the whole property; and that on the same day he and Peyrefitte had agreed on a price and had closed a deal for $2500.

In all of which plaintiff is corroborated in substance and in detail by Peyrefitte; and there is not a line of evidence in the record, written or oral, which contradicts this testimony in the slightest degree, or even suggests that it might be untrue.

73

So much for the defenses set up in the answer. But
when the case was on trial and the evidence being taken a
new defense was developed, which though wholly untenable
in law, yet prevailed with the trial judge and formed the
basis of his judgment; towit, that defendants when they
gave the option did not know, or did not intend, that it
should be a binding obligation according to its true tenor,
and merely thought or intended that it should serve as a
formal constitution of agency.

But the physical evidence in the record shows that
this option was neither hastily nor thoughtlessly given.
On the contrary it was the outcome and result of successive
and different written propositions, all of which were
submitted to a practicing attorney of more than 25 years
experience in such matters, acting for defendants, who
made written suggestions of changes to be made and even
assisted with his own hand in drafting the instrument as
finally agreed upon and executed.

But be all that as it may, the law in this state,
and the world over, is thoroughly well settled, that one
who voluntarily affixes his signature to a written
instrument obligates himself according to the very tenor
thereof; and he will not be permitted to say that he did not

intend to obligate himself, but meant to bind himself
only in some other way er even not at all. DeSota Building
Co vs Kohnstamm, Our No. 7267, and authorities there cited;
Bagneris vs Odde, Our No. 7471, and authorities there
cited; also Beagui vs Feuchy, 26 An 594 and Advance Thresher
Co vs Roger, 123 La 1067. For signatures to an obligation
are not mere ornaments, and parties will not be relieved
therefrom simply because they did net know or did net
intend what they signed. Boulet vs Sarpy, 30 An 494.

### V.

But the $600 due plaintiff are subject to a credit of
$250 received by plaintiff as a deposit from Peyrefitte
and deducted by him from the purchase price; and also to
a further credit of $77.55 for the taxes of 1916 due by
plaintiff but paid by defendants. Hence the balance due
plaintiff by defendants is $272.45, as stated in plaintiffs
letter of February 1st 1917. And accordingly

The judgment appealed from is therefore reversed, and
it is now ordered that there be judgment in favor of
plaintiff, Stanley A. Harvey, and against the defendants
Ulysse Marinoni, Jr. and Mrs. Olga Marinoni, wife of
William T. Nolan, for the full sum of Two Hundred and
Seventy-two & 45/100 Dollars ($272.45) and the costs of
both courts. ✳ 75

S. A. HARVEY

VS

MRS. W. C. NOLAN & al.

No. 8105.

8105

By CHARLES F. CLAIBORNE, JUDGE.

I owe it to the able District Judge and to our learned associate to give my reasons for differing from them in opinion in this case and concurring with the organ of this Court.

The instrument sued on is undoubtedly, upon its face, an option. But the defendants say that it was intended only as a power of attorney, and was put in that form for reasons which it is not necessary to state. The plaintiff denies this. Whom is it our duty to believe? The written instrument must incline the scales in favor of plaintiff. The intention of the parties and their rights and obligations must be found in that instrument. It is good and universal law that parol evidence shall not be admitted to contradict what is contained in an act. C. C. 2276. It is unassailable except for error or fraud. The defendants, through Mr. Ulysses Marinoni do not plead error, nor surprise, nor that he did not know what he was signing, nor that he thought that he was signing a procuration. He took an active part in the confection and writing of the instrument. His is not a simple, untutored, unsophisticated mind. He is a lawyer of learning and experience. His only defense is that the document does not contain his intentions nor those of the plaintiff. The burden of proof is upon him. The plaintiff answers that it contains the intentions of both parties. There is no other evidence in the case except the instrument itself. Defendant does not charge fraud in obtaining his signature; but if he does, he fails to prove it by the record. If Harvey had found a purchaser for only $1900 and the act of sale had been passed for that price, Marinoni might have refused to pay Harvey any commission, on the ground that he was merely carrying out the terms of the option

76

and that Harvey was not acting as his agent. This Court cannot put such a construction upon this instrument which would enable either party, as his interests might dictate, to treat it as an option or as a procuration. The rights of the parties were transfixed by the instrument, and upon its unambiguous terms they must be judged. There is nothing in the law which prevents a real estate agent from resorting to the form of an "option" rather than that of a "procuration", for the purpose of effecting a sale for the owner. Indeed it is not an uncommon practice. There may be more money in it for the agent if he procures a larger price than the option, and a greater incentive for his exertions. He may even obtain this option after he has secured a purchaser. It is only where he has acted as agent and obtained a purchaser prior to the option that his action would be contrary to good morals and to law if he obtained an option for a less price than the one he had previously secured from his purchaser.

Defendant understood that an allegation of that kind was an essential foundation of his defense. In his answer he alleges:

> "That thereafter (after plaintiff had found a purchaser) and without disclosing to respondents this fact, and denying that he had found a purchaser, he thereupon fradulently obtained respondent's signature to the document sued upon".

No evidence supports that allegation.

It is proven, on the contrary, that although the relations of Marinoni and Harvey, as principal and agent, began prior to November 24th, when the option was signed, it was only on December 6th, that Harvey obtained the consent of the purchaser to buy the lots for $2500. There was nothing in the law which prevented Harvey, agent, from buying from Marinoni, principal, or from obtaining from him an option, unless, as

77

we have said before, he had already secured the purchaser on the date of the option. The evidence is to the contrary. I think therefore that the option was good and valid, and that the defendant must pay the profit he has made in the sale. Doriocourt vs Lacroix, 29 A. 286.

NO. 8105

# COURT OF APPEAL
# PARISH OF ORLEANS.

**8105**

STANLEY A. HARVEY

versus

MRS. W. C. NOLAN, et al.

Dinkelspiel; J.

-Dissenting opinion-

Court of Appeal
PARISH OF ORLEANS

*[stamp and signature]*

8105

By Dinkelspiel; J.

This litigation arises from the following facts:

Plaintiff claims that on November 24th, 1916, defendants granted unto him the right to purchase within ninety days from said date, certain property under the terms and conditions mentioned in option.

Further claims that the option in question was registed in Conveyance Book 285, folio 548 on November 25th, 1916; further alleges that within the said period of ninety days plaintiff notified defendant of his desire to avail himself of the terms of the said option to buy property in question and requested defendants to appear before Notary Dreifous to pass said act of sale.

Alleging further that defendants announced their intention, after at first promising to pass the act of sale, not to be bound by the terms of said option and failed and refused to sign the act of sale to plaintiff notwithstanding amicable demand and notwithstanding defendants having been put in default.

Alleging further that defendants have undertaken to sign what purports to be an act of sale of said property to one G. A. Peyrefitte and have caused the said alleged sale to be recorded in the Conveyance Office and alleging also that said sale is without/force because of the registry prior to the time of the alleged sale of the option in favor of plaintiff.

Finally alleging that plaintiff had the opportunity in the event that defendants had performed their obligations under the terms of the said option and had sold the said property to plaintiff, to resell the same for the price and sum of Twenty Five Hundred Dollars, making a profit faxxikm out of said option, of the sum of Six Hundred Dollars and avers further in the alternative in the event that specific performance as herein prayed for is not

80

decreed in his favor that there should be a judgment in the sum of Six Hundred Dollars as damages.

The prayer of the petition is that defendants be cited and that there be judgment in favor of plaintiff for the sum of Six Hundred Dollars, costs and for general relief.

To this petition defendants filed various exceptions, one, want of jurisdiction ratione materiae, second for oyer of the notice of acceptance, third misjoinder of parties, fourth, petition discloses no cause of action.

These exceptions being referred to the merits answer was filed which substantially xxxxxx asserts the following propositions:

That during the months of September and October, 1916 defendants employed plaintiff as their agent to sell the real estate described in plaintiff's petition; that plaintiff accepted the said agency and undertook to sell said property as agreed and did actually find a purchaser, one G. A. Peyrefitte, but failed to disclose to defendants, this fact denying that he had found a purchaser and finally obtained defendants' signature to the document and that plaintiff's relation as agent never terminated and as such agent he could not under his contract xx terminate same to his own enrichment, without fully accounting to defendants for his agency and which he never did.

Alleging further that the act of plaintiff was a fraud upon defendants because he failed to give a full disclosure to them and attempted as agent to enrich himself at defendants expense; further alleging that it was contrary to the public policy of the State of Louisiana to act in the manner set forth and that it was an attempt by plaintiff to change the relation of agent to that of a third person, without rendering an account of the agency to defendants and alleging in reconvention that plaintiff as their agent collected from G. A. Peyrefitte on December 6th, 1916, the sum of $250.00 which he had failed to pay defendants.

81

Wherefore he was not entitled to any commissions on this sale having acted in fraud of his principals, rights and contrary to their best interest.

The prayer is that plaintiff's suit be dismissed at his costs and for judgment in reconvention in favor of defendant against plaintiff in the sum of $250.00 with interest from December 6th, 1916 until paid, for costs and general relief.

On the trial of this case plaintiff testified that on November 24th, 1916, he obtained from the defendant an option which he identifies and which is annexed to his petition. Further testifies that he exercised the option that was given him and produced and annexed to his testimony said option of the date as stated in his petition and further testified that the option was written at Mr. Marinoni's Law Office on his own letterhead and further testifies that defendants gave him a synopsis of all the titles of the property the option called for and that Notary Dreifous examined the title and on January 5th notified defendants that he was ready to pass act of sale on January 9th but defendants failed to appear at the Notary's office and that Mr. Peyrefitte was the purchaser of the property and that he bought under plaintiff's option and was to pay the sum of Twenty Five Hundred Dollars; also testified that he gave in connection with his option to Mr. Marinoni, the sum of ten dollars in check.

He further testified:

Q. A long time prior to the date of this alleged option you acted as Mr. Marinoni's agent, did you not?

A. Yes sir.

Q. Selling his real property?

A. Yes sir.

Q. Were you his agent up to the 24th of November?

A. Yes sir.

82

Q. You also was given this particular property to sell?
A. Yes sir.

He further testifies, without literally quoting, that Mr. Marinoni had a lot of vacant property and that he had sold to Mr. Peyrefitte, forty five feet of the property in question for the sum of Six Hundred Dollars but the Marinonis declined the offer but decided to give plaintiff the option which he, Marinoni, did.

Q. You know you were under no obligation to buy the property?
A. No sir. He wanted me to sell; said he needed the money, that he owed the Bank ten thousand dollars and he wanted me to sell the entire property and not a part.

Q. Mr. Harvey, did you ever disclose to Mr. Marinoni that you had an offer of Twenty Five Hundred Dollars for this property?
A. I got the offer on December 6th for Twenty Five Hundred Hundred Dollars and I accepted the offer promptly and I notified Mr. Marinoni I was going to exercise my option.

Q. Did you disclose to Mr. Marinoni you had this offer of Twenty Five Hundred Dollars on December 6th?
A. No sir.

Q. You thought you were under no duty whatever to tell Mr. Marinoni what you were getting for this property?
A. No sir.

Q. As you were acting as Mr. Marinoni's agent for a long time why didn't you tell him?
A. Because on December 6th, my agency ceased and I considered he was dealing with me as an individual not as an agent when he sold me the option.

He further testified, without quoting, that he was dickering with Mr. Peyrefitte for a period of three months but not on this particular property but on other property belonging to other people.

He also testifies that he had sold property for Marinoni during 1916 and 1917 as agent.

83

He goes on to testify that he could not get anybody to buy those six lots as a whole and" then Marinoni offered to sell them to the witness and he wrote up the option on his own typewriter, in his own office, in his own words and offered same to me and I paid him ten dollars in a check as a part payment for the option in question."

On cross examination:

Q. Coming to the date that you had Mr. Marinoni sign this alleged option, had you terminated your agency with Mr. Marinoni?

A. The contract was only for a specified time and I presumed it was terminated and evidently he considered it so and I considered it so.

And going on further to testify in this same connection he substantially says that he was representing Mr. Marinoni, trying to sell this property all the time for him as his real estate agent claiming in this connection that he was a speculator and acted as an individual.

He further testified that when he got Mr. Marinoni to sign the option he had no prospective purchaser and that at that time he was not dickering with Mr. Peyrefitte for the six lots and only on the 7th of December did Mr. Peyrefitte buy the lots in question.

Mr. Marinoni was called by plaintiff as on cross examination as under Act 126 of 1908 and substantially testified that he signed an option at the request of plaintiff who at that time and prior to that time was acting as his agent, not only for the sale of the property in question but had acted for him in other sales and that plaintiff told him, Marinoni that he had sold the property; that he had a purchaser, but did not inform Marinoni of the name of the purchaser or the exact amount of the purchase price; always considered plaintiff as his agent and thought he was in duty bound to tell him the name of his purchaser and give him the act purchase price;

84

always considered plaintiff as his real estate agent and had the utmost confidence in him. That plaintiff claimed that under the rules of the Real Estate Exchange which allowed him only three per cent commission and that this was a very hard piece of property sell, being unimproved property on Board Street; that he could handle this property but for not less than one hundred dollars commission and suggested that in order to protect plaintiff, for some reason or other, it would be better to write up some sort of option so that plaintiff, as his agent could be better able to sell the property and witness having the utmost confidence in plaintiff told him to put the option anyway he wanted and throughout Mr. Marinoni's entire testimony he swears constantly and repeatedly that plaintiff was his agent and that the option was given to him at his request for the reasons heretofore testified to and that was the only reason it was given to him at all.

Mr. G. A. Peyrefitte, the purchaser of the property in question testifies that he was the purchaser of the property in question and he signed the act of sale before Mr. Henry P. Dart, Jr. Notary Public and that he was not induced to go to Mr. Dart's office to purchase this property, went there of his own free will and accord.
Q. Mr. Peyrefitte, will you tell the Court about what time it was when you started dickering with Mr. Harvey for the purchase of this property?
A. It was several weeks before the I made the deal; I answered an ad about some other property which I could not get and then got Mr. Marinoni's lots; at first the price asked was three thousand dollars and for several weeks I was dickering with plaintiff and finally he offered the property to me for Twenty five hundred dollars; I accepted the offer and I gave him my check for ten per cent of the amount, $250.00; that was sometime in December but during the month of October Mr. Harvey was always trying to sell Marinoni's property to witness; testified

further that he never called upon Mr. Harvey but Harvey constantly urged him to buy this property but never would tell him who the owner was although he asked him several times.

Q. Did he leave the impression he owned it?

A. No sir; I thought he was selling it for someone else. Consequently he bought the property direct from Mr. Marinoni for the same price.

On cross examination:

Q. Mr. Peyrefitte, when you first went to deal with Mr. Harvey, it was the latter part of October, 1916, is that a fact?

A. Yes sir; it must have been five or six weeks fully before the I gave him the check; he was weakkneed and was holding off all the time for a price.

The witness further testifies that he started to deal with plaintiff for two of the lots and when this offer was not accepted and he could not buy the property that he wanted to buy, he finally bought the property in question.

A careful investigation and close study of this case has convinced me, that plaintiff had been the agent of defendants and as such successfully sold several pieces of property gaining the confidence of defendants.

Originally when this transaction began and defendants desired to dispose of the property in question they sought plaintiff and put in his hands the sale of the lots mentioned in this record. The price fixed was $1900.00, $100.00 of which was to be paid to plaintiff as his commission for the sale.

Plaintiff had charge as agent for defendants, in this transaction, as he had charge in former transactions ; had sought purchasers and amongst them was Mr. Peyrefitte who did not wish to buy but one lot and one half and for that purchase offered Six Hundred Dollars, which offer was submitted to defendants, who rejected same; subsequent

86

to this plaintiff endeavored time and again to dispose of the property in question as a whole, without success; he had met the present purchaser and endeavored to sell to him but the purchaser at the time refused to buy endeavoring to buy another piece of property which he considered too high for his use and was finally persuaded to buy the property in question for Twenty Five Hundred Dollars from plaintiff. In the meantime, whilst dealings were going on between plaintiff and Mr. Peyrefitte plaintiff ~~suggested~~ suggested to defendants that an option be given him at the same price which they were willing to accept from other parties and irrespective of the ~~defendants~~ difference in the testimony of plaintiff and defendant on this point, the one that it was an option outright, irrespective of agency and the other the reverse, it ended in the sale of the property for Twenty Five Hundred Dollars.

The purchaser has testified that he is disinterested as between the plaintiff and defendants, that he has become the owner of the property, title standing in his name and has paid Twenty Five Hundred Dollars; he swears and there is no contradiction as to his testimony.

It is absolutely true in ~~my opinion~~ my opinion ~~xxxxxxxx~~ that during the time that he was looking for property in that neighborhood plaintiff was insistent in trying to dispose of this property and during the ~~it~~ term of his agency was urging purchaser to complete the transaction and finally convinced that he had found a purchaser, being the same gentleman who has testified in this case he sought and obtained option in question, knowing at the time when he got the option that he was going to sell this property, not because he had the option, but simply because he saw a chance and opportunity of making Six Hundred Dollars and when the defendants were notified to come to the Notary's Office, Mr. Dreifous, to sign the act of sale, it was the first opportunity they had to know that their agent had mislead them, virtually deceived them and declined as they

87

has a right in my opinion, to sign, and subsequently sold the property direct to the purchaser.

Under these circumstances I cannot conceive how plaintiff can possibly expect to enrich himself at defendant's expense.

In this opinion I am confirmed by the Judge of the Court aquo who saw and heard the witnesses and therefore had a better opportunity of judging not only from their evidence but having them before him and was therefore in a better position to decide this case that I am. He has done done so in a very able opinion which is herein made part of this, my opinion in this case.

We copy in full verbatim the Judge's opinion:

"This is a suit by plaintiff to recover recover from the defendants the sum of six hundred dollars in default of a judgment for specific performance.

It appears that plaintiff had been acting for some time as the real estate agent of defendants, and was engaged in an endeavor to sell the particular property herein described as subject to his opition. He was particularly authorized to sell this property for the sum of $1900, but there was some hitch in the negotiations.

On November 24 Harvey claims to have obtained an option individually on the property for $10, which he claims to have paid by check. He continued to act as agent, and finally, after securing the so-called option, he undertakes to sell the property for $2500, to one of the prospective buyers with whom he was negotiating as the agent of defendants. When the defendants discovered that his agent was thus speculating upon him, he declined to acknowledge the validity of the so-called option and himself sold the property to the person who was the same individual with whom plaintiff had been conducting his negotiations.

88

The sale was made for the sum of $2250, thus figuring the total of $2,500, allowing $250, the fee stipulated to be paid Harvey.

There is no evidence that defendant understood that there was a distinct option given Harvey nor any evidence that the $10 was paid except the unsupported evidence of Harvey that he gave the check, and a denial by defendant that he received the money.

Agency requires the most careful conduct on the part of the agent. He is not, in good faith, allowed to speculate on a misunderstanding of his principal but is bound to disclose what he has learned in his agency to his principal, and cannot be allowed to privately reap a reward from his knowledge.

It appears to me that he is not entitled to a judgment for damages but must account for the money he has received on account of the sale.

Plaintiff has received $250, when, by special arrangement, he is entitled to withhold $125. He must account for the balance."

For the reasons assigned, I respectfully dissent the majority opinion rendered in this case.

-Dissenting opinion.